**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ian Lopatin, et al., | No. CV-15-02449-PHX-DGC |
| Plaintiffs, | **ORDER** |
| v. | |
| LTF Club Operations Company Incorporated, et al., | |
| Defendants. | |

Defendants have filed a motion to transfer this case to the United States District Court for the District of Minnesota. Doc. 6. Plaintiff filed an opposition, and Defendants replied. Docs. 22, 21. For the reasons that follow, the Court will deny the motion.[1]

**I.   Background.**

Plaintiffs in this action are Ian Lopatin, an individual residing in Arizona, and At One Yoga, LLC ("AOY"), an Arizona limited liability company that operates in Arizona. Doc. 1-2 (hereinafter *Complaint*), ¶¶ 12-13. The named Defendants are (1) LTF Club Operations Company, Inc. ("LTF Operations"), a Minnesota corporation with its principal place of business in Minnesota, (2) Lifetime Fitness, Inc. ("Lifetime"), a Minnesota corporation with its principal place of business in Minnesota and the parent company of LTF Operations, (3) Bahram Akradi, an individual residing in Minnesota and Lifetime's Chief Executive Officer, and (4) Joe Hall, an individual residing in Minnesota

---

[1] Defendants' request for oral argument is denied because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

and Life Time's Vice President of National Club Operations. *Id.*, ¶¶ 5, 14-17, 30. Ten unknown persons are also listed as defendants. *Id.*, ¶ 18.

Plaintiff Lopatin is the founder of AOY, a Scottsdale area yoga studio. *Id.*, ¶ 2. Six years ago, AOY was generating substantial revenue and achieving a significant profit margin due in large part to its proprietary system for training and certifying yoga instructors (the "Certification Program"). *Id.*, ¶¶ 2-3. AOY's success came at the expense of its competitors, including "Life Power Yoga," a Scottsdale area studio owned by LTF Operations. *Id.*, ¶ 4. In February 2010, Defendant Akradi approached Lopatin, in Scottsdale, about purchasing AOY. Doc. 20-1 at 2, ¶ 3. The two met several times in Arizona to negotiate the purchase, reaching an agreement on July 6, 2010. *Id.* Under the Agreement, Life Time purchased AOY and the right to use the Certification Program. *Id.*, ¶ 5. Life Time made a small upfront payment to Lopatin, and agreed to make deferred payments for the next five years based on the profitability of the Certification Program. *Id.*, ¶ 5. It promised to use "commercially reasonable efforts" to "develop, grow, and implement" the Program. *Id.*, ¶ 7.

Plaintiffs allege that Life Time has not delivered on its promise to invest in the Program. In fact, the Program's success since the sale has been so meager that Plaintiffs now suspect that Life Time's actual purpose was not to obtain the Certification Program, but to eliminate AOY so that Life Power Yoga could monopolize the Scottsdale yoga market. *Id.*, ¶ 9. Plaintiffs seek to recover the deferred payments that never materialized, asserting claims for breach of contract, breach of the implied covenant of good faith and fair dealing, fraudulent inducement, civil conspiracy, and unfair competition in violation of A.R.S. § 44-1402.

**II.   Legal Standard.**

28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." The Court adjudicates motions to transfer under this provision

"according to an individualized, case-by-case consideration of convenience and fairness." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (quotation marks omitted). The *Jones* Court enumerated eight non-exclusive factors that are relevant to this determination:

> (1) the location where the relevant agreements were negotiated and executed; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the respective parties' contacts with the forum; (5) the contacts relating to the plaintiff's cause of action in the chosen forum; (6) the differences in the costs of litigation in the two forums; (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses; and (8) the ease of access to sources of proof.

*Id.* at 498-99. The movant has the burden of showing that transfer is appropriate, *see Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-256 (1981), and "must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum," *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

**III. Analysis.**

Because all Defendants are residents of Minnesota, this action could have been brought in Minnesota, 28 U.S.C. § 1391(b)(1), and could be transferred there if such transfer would serve "the interest of justice," 28 U.S.C. § 1404(a).[2] But a review of the relevant factors shows that transfer would not serve the interest of justice.

The first factor favors Arizona. Plaintiff Lopatin avers that Defendant Akradi approached him in Arizona about purchasing AOY and that the two met in Arizona several times to negotiate the Agreement. Doc. 20-1 at 2, ¶ 3. Akradi admits that he attended these meetings. Doc. 7 at 19, ¶ 14. Although Defendants aver that Akradi and his staff worked on the negotiation from Lifetime's headquarters in Minnesota (Doc. 7 at 19, ¶ 16, *id.* at 24, ¶ 9), that is of limited relevance because this work was undertaken unilaterally, without Lopatin present. Indeed, Lopatin avers that he only went to Minnesota twice, after the deal was closed. Doc. 20-1 at 2, ¶ 3.

---

[2] Plaintiffs allege that Defendants LTF Operations and Lifetime are Minnesota corporations with their principal places of business in Minnesota. Doc. 1-2 at 6.

- 3 -

The second factor favors Arizona.  The Agreement is governed by Delaware law, which both this Court and the Minnesota court could apply.  As Plaintiffs aptly note, "[i]t would be difficult to find a single district in the federal court system that has not interpreted Delaware contract law."  Doc. 20 at 7.  Plaintiffs also assert a claim under A.R.S. § 44-1402, which this Court is best equipped to decide.  Defendants argue that the Court's familiarity with this provision is likely to be of little relevance because the claim is likely time-barred.  Doc. 21 at 6.  But if Defendants intend to assert a statute of limitations defense, that actually militates against transfer.  Arizona's discovery rule ensures that applying the State's statute of limitations is no mechanical task.  This Court frequently decides cases involving Arizona's discovery rule and is best equipped to decide any limitations issues that arise in this case.

The third factor favors Arizona.  Courts do not lightly disturb a plaintiff's choice of forum, particularly where, as here, the "forum chosen is not only the plaintiff's domicile but also has a significant connection with the subject matter of the case."  *L.A. Mem'l Coliseum v. Nat'l Football League*, 89 F.R.D. 497, 499-500 (C.D. Cal. 1981).

The fourth factor favors Arizona.  Plaintiff Lopatin is a resident of Arizona and AOY is an Arizona limited liability corporation.  Doc. 20-1 at 2, ¶ 3.  Defendants also have significant ties to Arizona.  Defendant Life Time Fitness, Inc. has five locations in Arizona.  Doc. 20-2 at 2, ¶ 4.  Defendant Akradi owns a home in Arizona.  Doc. 7 at 19, ¶ 15.  By contrast, Lopatin does not have significant ties to Minnesota.  Doc. 20-1 at 2.

The fifth factor favors Arizona.  The dispute in this case arises out of Defendants' contacts with Arizona – specifically, whether Defendants breached an agreement to purchase an Arizona business in an unlawful effort to monopolize the Scottsdale yoga market.  *See Complaint*, ¶¶ 1, 4-5, 9.  By contrast, Plaintiffs have no significant contacts with Minnesota, and, aside from the fact that Defendants reside there, Minnesota has no connection to the subject matter of this case.

The sixth factor favors Minnesota.  Plaintiffs do not identify any Arizona-based witnesses other than Lopatin whom they intend to call at trial.  By contrast, Defendant

Hall avers that there are thirteen current Life Time employees (including himself) and three former Life Time employees whom he expects to testify. Doc. 21 at 15-16, ¶¶ 7-9. Lopatin avers that he has "never heard of or dealt with the majority of the Life Time employees listed in Joe Hall's declaration," and that he did not have any significant contacts with any of the former employees listed in the declaration. Doc. 20-1 at 3, ¶ 5. That would be more persuasive if it were not for the fact that Plaintiffs list ten unknown persons as Defendants in their fraudulent inducement, unfair competition, and civil conspiracy counts. *Complaint*, ¶¶ 18-19. Because Plaintiffs have listed these unknown persons, several Life Time employees may have to testify if the case goes to trial.

The seventh factor is neutral. Neither side identifies any unwilling nonparty witnesses they intend to subpoena. *See* Doc. 21 at 9 (acknowledging that all Life Time employees "will voluntarily testify").

The eighth factor is also neutral. Defendants argue that this factor favors Minnesota because the Defendant companies keep their records there. Doc. 21 at 10. But that consideration is less relevant in a day of electronic record keeping. Defendants do not identify any barrier to electronic production; indeed, it appears they have already electronically produced over 500 documents. Doc. 20-2, ¶ 8.

Defendants argue that one additional factor militates in favor of transfer: relative court congestion. But "[r]elative court congestion is at best, a minor factor in the section 1404 calculus." *Royal Queentex Enterprises v. Sara Lee Corp.*, No. C-99-4787 MJJ, 2000 WL 246599, at *8 (N.D. Cal. Mar. 1, 2000). That is particularly so where, as here, the expected time to trial is only a few months shorter in the proposed transferee forum: the median time to trial in the District of Arizona is 27.1 months, as compared to 24.4 months in the District of Minnesota. *See* Doc. 20-8. The Court also fully expects to get this case to trial in less than 27 months.

Of the nine factors considered, five favor Arizona, one favors Minnesota, and three are neutral. Defendants have not made the strong showing required for transfer under § 1404(a).

**IT IS ORDERED** that Defendants' Motion to Transfer (Doc. 6) is **denied.**

Dated this 3rd day of February, 2016.

_____
David G. Campbell
United States District Judge